UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BELL, | ) | CASE NO. 4:01CV915 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| KELLEH KONTEH, et al., | ) | INTERIM REPORT |
| | ) | AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Defendants. | ) | |

This matter is before the Court on Defendant Kelleh Konteh's ("Defendant Konteh") motion for summary judgment. ECF Dkt. #127. The Honorable John R. Adams referred the case to the undersigned for general pretrial supervision. ECF Dkt. #113. For the following reasons, the undersigned RECOMMENDS that the Court DENY Defendant Konteh's motion for summary judgment:

I.  **PROCEDURAL HISTORY**

On April 16, 2001, Plaintiff Christopher Bell ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 1983. ECF Dkt. #1. Plaintiff alleged that Defendant Konteh and other staff members at the Trumbull Correctional Institution ("TCI") committed several retaliatory acts against Plaintiff while he was housed at the facility. *Id*. On May 21, 2001, the Court dismissed Defendant Folmer sua sponte because Plaintiff did not allege any violations of 42 U.S.C. § 1983 within the two year statute of limitations. ECF Dkt. #8. On November 16, 2001, Plaintiff filed a motion for leave to amend his complaint. ECF Dkt. #33. On August 30, 2002, the Court granted Plaintiff leave to amend his complaint. ECF Dkt. #52.

On October 15, 2001, the defendants filed a motion for judgment on the pleadings. ECF Dkt. #27. On August 30, 2001, the undersigned issued a report and recommendation, recommending that the Court grant the motion and dismiss the case. ECF Dkt. #53. On September 20, 2002, the Court adopted the report and recommendation and granted the motion and dismissed the case. ECF Dkt.

#54. On October 10, 2002, Plaintiff filed a motion for reconsideration, claiming that he did not receive a copy of the undersigned's report and recommendation. ECF Dkt. #55. On October 22, 2002, the Court vacated its September 20, 2002 order and reopened the case. ECF Dkt. #57. Following objections by Plaintiff to the undersigned's August 30, 2001 report and recommendation, the Court dismissed all of Plaintiff's claims except for his Eighth Amendment claims. ECF Dkt. #64. On August 23, 2004, the defendants filed a motion to dismiss the remaining claims. ECF Dkt. #81. On March 11, 2005, the Court granted the motion and dismissed the case. ECF Dkt. #92.

On April 11, 2005, Plaintiff filed a notice of appeal. ECF Dkt. #97. On June 22, 2006, the Sixth Circuit Court of Appeals reversed the Court's opinion relating to Plaintiff's failure to protect claim against Defendant Konteh and remanded the matter for further proceedings on that single claim. ECF Dkt. #104. On March 12, 2007, the Supreme Court denied Defendant Konteh's petition for writ of certiorari. ECF Dkt. #110.

On August 21, 2007, Judge Adams referred the case to the undersigned for general pretrial supervision. ECF Dkt. #113. On March 31, 2008, Plaintiff filed a motion to compel Defendant Konteh to respond to requests for production of documents, requests for admissions, and interrogatories that he sent on February 1, 2008. ECF Dkt. #123. On April 29, 2008, the undersigned ordered Defendant Konteh to file those requests and his responses on the docket for the Court's review. ECF Dkt. #125. On May 15, 2008, the undersigned denied Plaintiff's motion to compel discovery as moot because Defendant Konteh had furnished timely responses to some requests and failed to timely respond to Plaintiff's February 5, 2008 request for admissions, thereby deeming them admitted pursuant to Federal Rule of Civil Procedure 36. ECF Dkt. #129.

While the aforementioned discovery dispute was pending, Defendant Konteh filed a motion for summary judgment. ECF Dkt. #127. On June 11, 2008, Plaintiff filed a brief in opposition. ECF Dkt. #134. On July 8, 2008, Defendant Konteh filed a reply. ECF Dkt. #137. On July 15, 2008, Plaintiff filed a motion for leave to file a surreply. ECF Dkt. #138.

**II.    STANDARD OF REVIEW**

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution

by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This burden can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial. *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986); *Morales v. Am. Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence and all the inferences that can reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party. *Id.*

If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F .2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

### III.   LAW AND ANALYSIS

Defendant Konteh contends that no genuine issue of material fact exists surrounding Plaintiff's Eighth Amendment claim. ECF Dkt. #127 at 7. Defendant Konteh further contends that Plaintiff has failed to demonstrate that the instant suit is not barred under qualified immunity. *Id.* at 6-7.

### A. Summary of the pertinent law

The Eighth Amendment to the United States Constitution prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference requires that the official both know of and disregard an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

More specifically, prison officials have a duty to protect inmates from violence by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)(citations omitted). However, prison officials do not violate a prisoner's rights under the Eighth Amendment every time one prisoner inflicts injury on another. *Id.* at 834. A prison official violates an inmate's Eighth Amendment rights only when two requirements are met. First, "the deprivation alleged must be, objectively, sufficiently serious." *Id.* (internal citations omitted). In other words, the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' " *Id.* quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order for a prisoner to succeed on a claim based on a prison official's failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Second, it must be shown that a prison official acted with "deliberate indifference" in failing to protect the inmate. *Farmer*, 511 U.S. at 834. A prison official acts with deliberate indifference when he knows that an inmate faces a substantial risk of serious harm and the official disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837. The prison official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* It is sufficient for an inmate to show that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Id.* at 842.

The affirmative defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defendants show facts that suggest that they were acting within their discretionary authority during the incident, "the burden

then shifts to the plaintiff to show that the defendant[s'] conduct violated a right so clearly established that any official in [their] position would have clearly understood that [they] were under an affirmative duty to refrain from such conduct." *Flint v. Kentucky Dep't of Corr.,* 270 F.3d 340, 347 (6th Cir. 2001), citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

The Sixth Circuit has established a tripartite procedure for reviewing claims of qualified immunity. In the first step, the Court determines if a constitutional violation occurred. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996). This first step applies regardless of whether a prisoner plaintiff is seeking damages or injunctive relief. *See Williams v. Mehra*, 186 F.3d 685 (6th Cir.1999). In the second step, the Court determines whether the right that the officials violated was clearly established at the time of the alleged incident. *See Dickerson*, 101 F.3d at 1157. The final step involves the Court determining " 'whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what [the officer] allegedly did was objectively unreasonable in light of [the] clearly established constitutional rights.' " *Id*. at 1158, quoting *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir.1994).

### B. Application of the law to the instant case.

Defendant Konteh's assertion that Plaintiff has failed to present sufficient evidence in support of his claim is misplaced because Defendant Konteh has made several admissions that provide an evidentiary basis for Plaintiff's claim. On May 15, 2008, the undersigned issued an order observing that Plaintiff's February 5, 2008 request for admissions had been admitted pursuant to Federal Rule of Civil Procedure 36(a)(3) due to Defendant Konteh's failure to provide a timely response to the discovery request. Rule 36(b) provides that a court, **on motion**, may grant relief from such an order if the withdrawal of the admissions would promote the presentation of the merits without prejudicing the nonmoving party. *See* Fed. R. Civ. P. 36(b) (emphasis added). Defendant Konteh, however, has not filed such a motion. In fact, Defendant Konteh has not even acknowledged this Court's May 15, 2008 order, despite having two separate attorneys assigned to the case, having over two months to review the Court's order, and having a professional obligation to examine the docket. *See* ECF Dkt. #127, 137; *see* Fed. R. Civ. P. 11(b)(3)-(4); Model Rules of Prof'l Conduct R. 1.3 (requiring reasonable diligence in representation of clients); Local R. App.

B. ¶14 ("In addition to receiving e-mail notifications of filing activity, the parties are strongly encouraged to sign on to the electronic filing system at regular intervals to check the docket in their case."). Further, the docket text itself provided Defendant Konteh with notice of the Court's ruling:

> Order : denying plaintiff's motion to compel discovery (Related Doc # 123 ); **further, the Court deems plaintiff's 2/5/08 request for admissions admitted.** Signed by Magistrate Judge George J. Limbert on 5/15/08.(S,AA) (Entered: 05/15/2008).

ECF Dkt. #129 (emphasis added). Rather than acknowledge the Court's order, Defendant Konteh has furnished affidavits that were recently generated on June 13, 2008 and July 8, 2008 for the purposes of the instant motion. ECF Dkt. #137, Ex. D, E. For the most part, these affidavits challenge facts that have already been conclusively established by Rule 36.

Through Defendant Konteh's failure furnish a timely response to Plaintiff's request for admissions, he has admitted the following pertinent facts, among others:

1. In March 1997 the plaintiff and his family members wrote letters to the Director, Deputy Director, and Regional Director of the Department of Rehabilitation that his life and or safety was in peril.

2. In April 1997 the plaintiff and family members wrote letter's [sic] to the Bureau of Classification @ the Department of Rehabilitation and Correction that his life and or safety would be in peril if he is transferred to Trumbull Correctional Institution.

3. In May 1997 the plaintiff wrote and mailed a letter to the Bureau of Classification notifying the "Bureau" that his safety was in peril at the Trumbull Correctional Institution.

4. In the month of May 1997 and June 1997 the Department of Rehbailitation [sic] and Correction (including the Bureau of Classification) forwarded notice and advisement to the Trumbull Correctional Institutional Administration of the plaintiff's concerns for his safety.

5. In the month of October 1997, and November 1997 plaintiff was interviewed by the Unit Manager in B-Unit about his safety concerns.

6. In October 1997, November 1997 and December 1997 it was decided that the sources of the threats to the plaintiff's safety concerns were deriving from B-Unit.

7. In October 1997, November 1997, December 1997 it was decided that plaintiff would not for any reason ever be housed in B-Unit.

8. Plaintiff filed a grievance against the defendant (Warden) Konteh in March 1999.

9. The Department of Rehabilitation and Correction Generated a decision to the plaintiff concerning his grievance against (Warden) Defendant Konteh, in May

       1999.

10. On or about May 24, or 25 1999 the plaintiff was ordered by the (Warden) defendant Konteh to pack his property up and move to Unit-B.

*   *   *

18. Unit staff in Unit-A alerted the defendant Konteh that plaintiff' safety would be in peril if he is forced too [sic] be housed in Unit-B.

19. The failure of the defendant Konteh to adhere to plaintiff's documented separations are the cause of the plaintiff's injuries.

20. There is an informal policy at Trumbull Correctional Institution that prisoners who file complaints are retaliated against.

21. Defendant Konteh knew of this informal policy and acquiesced in it's [sic] application, as well as promoted it.

22. The failure of defendant Konteh to take steps to protect the plaintiff resulted from the informal policy stated in paragraph 20.

23. Bed moves are the sole province of Unit Staff.

*   *   *

27. The plaintiff suffered swelling under his eye, swelling on his head, and swelling on the back of his head, and brusied [sic] ribs and other injuries.

28. The failure to provide physical therapy, and mental therapy presents a substantial risk of permenent [sic] paranoia and anxiety as well as nervousness around prison officials resulting in lack of trust.

*   *   *

ECF Dkt. #126 at 2-4, ECF Dkt. #129 at 2 (hereinafter referred to as "Admissions"). Despite these admissions, Defendant Konteh contends that Plaintiff is attempting to meet his burden of proof by "proffering hearsay, circumstantial evidence, and affidavits of parties who have no first hand knowledge." ECF Dkt. #137 at 8.

### i. Eighth Amendment Claim

Contrary to Defendant Konteh's arguments, the foregoing admissions provide an evidentiary basis upon which a reasonable jury could find in favor of Plaintiff. Turning first to the issue of Plaintiff's Eighth Amendment claim, the initial consideration is whether Defendant Konteh was aware of facts that would allow a reasonable person to infer that a substantial risk of serious harm existed. *See Farmer*, 511 U.S. at 834. Defendant Konteh contends that "Plaintiff has not produced

-7-

one single piece of significant probative evidence that remotely demonstrates that Defendant Konteh was aware of any facts that would allow him to infer that there was a substantial risk that Plaintiff would be assaulted by other inmates." ECF Dkt. #137 at 7. That assertion, however, is misplaced because Defendant Konteh's knowledge is clear, based upon his admission that the unit manager for Unit A informed him that Plaintiff's safety would be in peril if he were transferred to Unit B. Admission 18. Therefore, the knowledge requirement is satisfied.

The question surrounding the seriousness of the potential harm in this case is a closer issue. The Seventh Circuit Court of Appeals has held that a beating suffered at the hands of a fellow inmate "clearly constitutes serious harm." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir.2005). Therefore, if Defendant Konteh was aware of a substantial risk of an assault by other inmates, the seriousness prong is satisfied. Here, Plaintiff has furnished an affidavit from himself, stating that he arrived at TCI in April of 1997 and several prisoners were threatening to kill him. ECF Dkt. #134 Attach. 1 at 2. Plaintiff further asserts that he informed a unit manager, the Bureau of Classification, and Bernard Ryznar of the threats. *Id*. In May, 1997, the Bureau forwarded his letter to Betty Mitchell, who was TCI's warden at the time. *Id*. The admissions establish that Plaintiff informed the unit manager in Unit B of his safety concerns and the unit manager decided that Plaintiff would never be housed in Unit B for any reason. Admissions 5-7.[1] Since the unit manager determined that Plaintiff should not be housed in Unit B based upon safety concerns, it is fair to infer that a potential harm was sufficiently serious in order to justify the unit manager's decision. The question is whether Defendant Konteh's admissions establish that he was aware of this particular risk.

Defendant Konteh admitted that the Unit A staff informed him that Plaintiff's safety would be in peril if he were to be moved to Unit B. Admission 18. Defendant Konteh also admitted that

---

[1] It is important to note that admissions 5-7 are written in the passive voice and it is not entirely clear *who* decided that plaintiff would never be housed in Unit B. The Court, however, is obligated to construe the evidence in the light most favorable to Plaintiff. Therefore, the Court should draw the reasonable inference that the Unit Manager in Unit B made that determination because bed moves are the sole province of unit staff. Admission 23.

-8-

he ordered Plaintiff to be moved to Unit B even though such a decision is the sole province of unit staff. Admissions 10, 23. Defendant Konteh admitted that he failed to protect Plaintiff (presumably in ordering the move) as a form of retaliation for filing a grievance. Admissions 8, 10, 18-22. In light of Defendant Konteh's retaliatory motive, it is reasonable to infer that he was aware of potentially serious injury in the form of an assault by other inmates. *See* Admission 8, 20-23. In light of this potential inference, the undersigned finds that Plaintiff has produced sufficient evidence demonstrating a genuine issue of material fact.

Defendant Konteh contends that Plaintiff reported the threats prior to the time that Defendant Konteh served as warden of TCI; therefore, those reports do not establish Defendant Konteh's knowledge. ECF Dkt. #137 at 9. Defendant Konteh's argument is unavailing. Although Defendant's theory may be viable at trial, it does not vitiate the possible inference that he was aware of the threats when he ordered Plaintiff's bed move with retaliatory intent. Consequently, a reasonable inference exists upon which a jury could find in favor of Plaintiff and, therefore, summary judgment is improper.

The second prong of Plaintiff's Eight Amendment claim (deliberate indifference toward the risk) is easily satisfied based upon Admissions 8, 18-23. Defendant Konteh has admitted that he retaliated against Plaintiff for filing a grievance in 1999. Admissions 8, 20-22. Further, he has admitted that he failed to protect Plaintiff in furtherance of the informal policy where prison officials retaliate against prisoners who file complaints. Admission 20. Finally, Defendant Konteh admitted that the Unit A staff informed him that Plaintiff's safety would be in peril if her were to be moved to Unit B, but Defendant Konteh still ordered the bed move. Admission 10, 18. Therefore, it is clear that sufficient evidence exists upon which a reasonable jury could find that Defendant Konteh acted with deliberate indifference. *See Farmer*, 511 U.S. at 834.

It is also important to note that Defendant Konteh has admitted that Plaintiff suffered harm in the form of swelling under his eye and on his head, bruised ribs, and other injuries. Admission 27. Defendant Konteh has also admitted that Plaintiff stands a substantial risk of incurring permanent paranoia and anxiety because he did not receive physical and mental therapy following the assault. Admission 28.

### ii.  Qualified Immunity

Now turning to the issue of qualified immunity, it is clear that Plaintiff has again satisfied his burden.  The first step, whether a constitutional violation occurred has been addressed in the foregoing Eighth Amendment Analysis.  The second prong, whether the constitutional right was clearly established at the time of the incident, is clearly satisfied because the United States Supreme Court decided *Farmer* in 1994 and articulated a duty for prison officials to protect prisoners; the incident in the instant case occurred on May 26, 1999.  *See* ECF Dkt. #137 at 2 (as to the date of incident).  Plaintiff has also satisfied his burden as to the final prong, objective unreasonableness, through Defendant Konteh's admissions that he acted in furtherance of a retaliation policy.

### iii.  Potential Motion for Relief from May 15, 2008 Order

The undersigned notes in closing that, should Defendant Konteh file a motion seeking relief from the undersigned's order of May 15, 2008, (ECF Dkt. #129), the Court should consider the fact that counsel has failed to address the issue, despite having ample opportunities to do so between May 15 and today's date.

## IV.  CONCLUSION

For the following reasons, the undersigned RECOMMENDS that the Court DENY Defendant Konteh's motion for summary judgment.  ECF Dkt. #127.


DATE:  July 22, 2008                                  */s/George J. Limbert*
                                                                         GEORGE J. LIMBERT
                                                                         UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).